<hr />

## Henry D. Shear
### v.
## Timothy Mosher.

1. Arbitration—Misconduct of Arbitrator.—That it was misconduct on the part of an arbitrator to listen after he was chosen to any statement by anybody except in the way of testimony regularly delivered in relation to any matter to be submitted.

2. Duty of Arbitrator.—That it is the duty of an arbitrator as of a juror or judge, to keep himself, as far as possible, free from any influence that would tend to impair his impartiality, or expose him to suspicion or prejudice.

3. Misconduct of Arbitrator.—That the effect of misconduct of an arbitrator upon an award may not be the same as that of a juror upon a verdict, for several reasons he is voluntarily selected by the parties to the controversy, who are therefore estopped to complain of prejudice previously and honestly imbibed without fraud of the adverse party, and then a larger interval of time usually occurs between his selection and his service, subjecting him to greater exposure. He is not specially advised of his duty and restrained in his conduct by the direction and authority of a court.

4. WHERE UNANIMITY NOT REQUIRED.—That where the submission does not require unanimity in the award, misconduct of one of a kind or degree—which, if a majority participated in or were affected by it—would vitiate the award, may not so operate if the misconduct and its effect are confined to one.

5. CONVERSATION WITH THIRD PARTY—SETTING ASIDE AWARD.—That a conversation with one arbitrator with a third party upon the matters submitted, not shown to have been produced by a party to the submission, nor to have been sought by the arbitrator, to have had the effect to prejudice him, or to have influenced the action of the other arbitrators composing a majority having power to determine the question submitted, will not be sufficient to justify the setting aside of the award.

6. EVERY INTENDMENT IN FAVOR OF AWARD.—That in the absence of affirmative proof of fraud, partiality or unfairness—which are never presumed—every intendment is in favor of the award.

APPEAL from the Circuit Court of Knox county; the Hon. JOHN J. GLENN, Judge, presiding. Opinion filed February 28, 1881.

Messrs. MCKENZIE & CALKINS, for appellant; that the motion to suppress should have been sustained, cited Morse on Arb. and Award, 563; Hubbell v. Bissell, 2 Allen (Mass.) 201.

The testimony of arbitrators ought not to be received to impeach their award: Denman v. Bayless, 22 Ill. 300; Stone v. Atwood, 28 Ill. 30; Pullian v. Pensoneau, 33 Ill. 378; Claycomb v. Butler, 36 Ill. 103; Tucker v. Page, 69 Ill. 179; Hubbell v. Bissell, 2 Allen, 197; Bigelow v. Maynard, 4 Cush. (Mass.) 321; Morse on Arb. and Award, 562, 568.

The testimony of arbitrators may be received to show what matters were submitted to them and what evidence was heard before them: Spurck v. Crook, 19 Ill. 415.

For what misconduct on the part or arbitrators courts will set aside an award: Fisher v. Towner, 14 Conn. 26; Wheeling Gas Co. City of Wheeling, 5 W. Va. 492; Flatter v. McDermitt, 25 Ind. 326; Graves v. Fisher, 15 Me. (Greenleaf) 54; Neely v. Buford, Sup. Court of Mo. Oct. term, 1877; Herrick v. Blair, 1 Johns Ch. 101; Devereux v. Burgman, 11 Ired. (N. C.) 490; Walls v. Wilson, 28 Pa. St. 514; Butler v. Boyles, 29 Tenn. 155; May v. Yancy, 4 Leigh (Va.) 362; Rheem v. Allison, 2 S. & R. (Pa.) 113; Plummer v. Saunders, 55. N. H.

28; Elmaker v. Buckley, 16 S. & R. 72; Davis v. Forchee, 34 Ala. 107; Daugherty v. McWorter, 7 Yerger, 246; Brown v. Leavitt, v. 26 Me. 251; Bird v. Laycock, 7 La. Ann. 171; Morville v. The American T. Soc. 12 Mass. 140.

When court will not set aside an award on the ground that new evidence has been discovered: Bancroft v. Grover, 23 Wis. 416; Dulin v. Caldwell, 29 Ga. 362; Aubel v. Ealer, 2 Binn. Pa. 581; Allen v. Ranny, 1 Conn. 569; Gottschalk v. Hughes, 82 Ill. 484; City of Elgin v. Renwick, 86 Ill. 500; Calhoun v. O'Neall, 67 Ill. 219; Crozier v. Cooper, 14 Ill. 139; O'Reilly v. Fitzgerald, 40 Ill. 310.

Mr. L. DOUGLAS and Messrs. WILLIAMS & LAWRENCE, for appellee, cited to show for what an award will be set aside: Chambers v. Crook, 42 Ala. 104; Rice v. Loomis, 28 Ind. 399; 2 Parsons on Contracts, 770; Craft v. Thomson, 51 N. H. 543; Cutting v. Carter, 29 Vt. 72; Martin v. Morelock, 32 Ill. 486; Stampofski v. Steffins, 79 Ill. 306; Metcalf v. Dean, Cro. Eliz. 189; M. Knight v. Freeport, etc., 13 Mass. 218; Spurck v. Crook, 19 Ill. 415; Strong v. Strong, 9 Cush. 571; Johnson v. Holyoke Water Power Co. 107 Mass. 473; Fox v. Hazleton, 10 Pick. 275; Conrad v. Massasoit Ins. Co. 4 Allen 25; Merville v. Am. Tract Soc. 128 Mass. 139; Graham v. Pence, 6 Randolph, 537; Wheeling Gas Co. v. City of Wheeling, 5 W. Va. 492; Russell on Awards, 106, 205; Morse on Arbitration, 106, 107, 534; Spear v. Bidwell, 44 Pa. St. 22; Graves v. Fisher, 5 Greenl. Me. 154.

PLEASANTS, J. The parties to this suit holding counter claims, appellant's in open account and appellee's in notes with credits indorsed, and being unable to effect a settlement by themselves, submitted their matters in difference to three arbitrators, who found for appellant a balance due of $1,100. After much complaint and urging by appellee he consented to cancel the award and have another hearing before another Board, with a stipulation that the statements of the parties and their witnesses, as taken down by the short hand-reporter on the former arbitration, should be received as evidence, that each might introduce the parties and such other witnesses as

he should desire, and that the award of said arbitrators, or of any two of them should be entered as the judgment of the circuit court. These arbitrators, after a hearing of some ten days, the 20th of April, 1875, awarded to appellant, as the balance found due him, the sum of $704.62.

Thereupon, appellee filed his bill, alleging that appellant, by presenting a false and fabricated account as a book of original entries, and supporting it by his own testimony, knowingly false, had deceived the arbitrators; that they did not read or consider the evidence before them; that they made a miscalculation; that they unlawfully allowed to appellant interest at ten *per cent. per annum* and compounded it; that Jonathan Hubbell, one of said arbitrators, was prejudiced against complainant and his claim through representations previously made to him by defendant; that said arbitrator, after he was selected and while on his way to sit as such, stayed over night at the house of A. P. Stevens, one of the first board, who was also prejudiced against complainant, for the purpose of obtaining from him an account of the items allowed against complainant by said first board, and that said Stevens gave him a pretended account of the evidence submitted to and of the amount made by said board, and thereby impressed him with the belief that defendant's account was correct and just, all of which was unknown to complainant until after said last award was made and by reason whereof the same was void, and praying that it be set aside or corrected, and that defendant be enjoined against any proceeding to collect it.

These averments were all denied by the answer. The testimony of many witnesses was taken, including some, but not all, of those who testified before the arbitrators, and others who had not so testified. The court found all the issues so made for the defendant, except as to the alleged misconduct of Hubbell in talking with Stephens, in respect to which the decree recites that "from the evidence the court doth find that Jonathan Hubbell, one of said arbitrators, after he was chosen as such arbitrator was guilty of misconduct in this, that he had held, on his way to sit as such arbitrator, a conversation with one A. P. Stephens of and concerning said arbitration, and of

and concerning the matters in difference between complainant and said H. D. Shear, and of and concerning the matter submitted to the said arbitrators, and that by reason of such misconduct the said award is void," and thereupon decreed "that said award be and the same is hereby set aside, and that the same shall be forever for naught held, and the injunction herein be and the same is made perpetual, and that the defendant pay the costs of suit," from which decree the defendant appealed.

No cross-error is assigned; and approving, as we do, the finding of the circuit court upon the other issues, the only question for consideration is whether the misconduct of the arbitrator named was such as to justify the setting aside of the award.

All of the facts appearing in relation to it are set forth in the testimony of said Hubbell and Stephens and one S. Rice.

Hubbell testified that he was a farmer and resided in Altona; that he had known Stephens for twenty years and esteemed him highly; that he was in the habit of going to Stephens' house to stay all night to take the train when going to Knoxville or Galesburg; that he stayed there the night before the arbitration because he did not want to stay at a hotel, and had no other object than getting a place to stay all night; that on that occasion they talked three or four hours; that they talked about the former arbitration; how much of the time he did not recollect, but he did recollect that another subject came up about which they quarreled before they went to bed, but they talked a good deal about the case, and nothing was kept back for delicacy; that he remembered one thing that Stephens told him about the rate of interest they allowed and what he said about it, but mentioned no other; that he thought he did not solicit the statement and that nothing said by Stephens about the former arbitration influenced him for or against either of the parties in making up the award; that he made it honestly, in good faith, without bias or prejudice by anything or by what any person said except in evidence; that he then thought on the proof that was before them that it ought to be a little larger than it was, and had no reason since to think otherwise.

The whole of Stephens' statement on the subject is in his

answer to interrogatory 15: "Did Mr. Hubbell inquire of you anything in regard to the matter in dispute between Mosher and Shear which was submitted to the arbitrators?" and is as follows: "The matter was talked over. Don't know whether Mr. Hubbell made the inquiry or I gave it voluntarily myself. Think I told him what we allowed and what we threw out. Think I told him we allowed Mr. Shear only that portion of his account which was corroborated by the testimony of others.

Mr. Hubbell having stated that he had no recollection of talking with Rice about Stephens—that they talked about the case but nothing was said about Stephens, and that he did not think he had ever told Rice that he was influenced in making the award by what Stephens said. Mr. Rice was called and testified as follows: "I am a lightning-rod man. I know the parties and Mr. Hubbell. I stayed all night with him since the arbitration. Hubbell said he stopped over night with Stephens on his way to the arbitration. I told him Mosher thought that he had his mind made up through the influence of Stephens. He said that he did not think Stephens meant to influence him. He said he had read of it in the newspaper and could have had his mind made up from the newspaper just as well. He did not say he was influenced by what Stephens told him."

It appears that prior to the last arbitration, Mr. Mosher published in a Galesburg newspaper, two communications complaining of the first award and proposing a rehearing upon conditions stated and that the first rehearing occupied two or three weeks. These circumstances had doubtless given some notoriety to the controversy, and it was, not unnaturally the subject of conversation, more or less general, among the friends and acquaintances of the parties. Nevertheless it was unquestionably misconduct on the part of Hubbell to listen, after he was chosen as one of the arbitrators, to any statement by anybody, except in the way of testimony regularly delivered, in relation to any matter to be submitted; because the effect might be to bias his judgment in advance of the hearing, consciously or unconsciously.

It is the duty of an arbitrator, as of a juror or judge, to keep

himself, as far as possible, free from any influence that would lead to impair his impartiality or expose him to the suspicion of prejudice.    Strong v. Strong, 7 Cush. 560; Johnson v. Holyoke Water Power Co. 170 Mass. 473; Morville v. The Am. Tract Society, 123 Mass. 139; Wheeling Gas Co. v. The City of Wheeling, 5 West Va. 492.

The effect, however, of misconduct of an arbitrator upon an award may not be the same as that of a juror upon a verdict, for several reasons.    He is voluntarily selected by the parties to the controversy; who are therefore estopped to complain of prejudice previously and honestly imbibed without fraud of the adverse party.

A longer interval of time usually occurs between his selection and his service, subjecting him to greater exposure.    And he is not specially advised of his duty and restrained in his conduct by the direction and authority of a court.    Hence a greater latitude is to be expected and tolerated in his case than in that of a juror.    Jones v. Miller, 1 Dallas, 205; Graves v. Fisher, 15 Maine, 54; Wheeling Gas Co. v. The City of Wheeling, *supra*.

Nor is it usual, where the submission is to three or more, to require unanimity in the award.    It was not required here.

In such case it has been held that misconduct of one, of a kind or degree which if a majority participated in or were affected by it would vitiate the award, may not so operate if the misconduct and its effect are confined to one.    Plummer v. Saunders, 55 N. H. 28; Watt v. Wilson, 28 Pa. St. 515; Strong v. Strong, 12 Cush. 137.

In respect to the conversation between the arbitrator and Stephens here complained of, we observe upon the testimony above set forth, which is all that the record discloses, first, that appellant did not procure, suggest or know of it, and is nowise responsible for it; second, that it does not appear that the arbitrator sought it, much less that he sought it corruptly, in the interest of appellant; third, it does not appear that it prejudiced him against appellee, or influenced his mind to any conclusion in the case against evidence to the contrary, or without evidence which would have induced the same independ-

ent of such conversation. We do not say that in fact it did not, but that it is not made so to appear. If appellant had procured it we would indulge the presumption that it did prejudice him whether he was conscious of it or no, and that presumption would not be overcome or rebutted by his own statement of his belief that it did not. Spurck v. Cook: 19 Ill. 426. But in the absence of proof of such procurement, the burden is upon the appellee, who charges the fact, to make it affirmatively appear.

This he has failed to do. It is shown that the former arbitration was the subject of a free and protracted conversation, but what was said by Stephens, specifically, is not shown, except that he said the arbitrators disallowed the items of appellant's account that were uncorroborated by other testimony than his own. We cannot adopt the assumption of counsel that Stephens was prejudiced against appellee. It is true that while sitting as an arbitrator he had sought and obtained of a Bank certain information which he thought bore upon a disputed item of payment, without disclosing the fact.

This was clearly improper, but whether he sought the information in the interest of appellant or expected or hoped that it would be in his favor does not appear. At all events it is not shown that in his statements to Hubbell he went beyond the evidence as taken down by the reporter, which he probably knew was to go before the new board, or misstated it in any particular, and we cannot assume that he did, nor, if he did, that his statements were used by Hubbell to affect the judgment of the other arbitrators.

In courts of equity this amicable mode of settling controversies is looked upon with an indulgent eye. Ballance v. Underhill, 3 Scam. 453. In the absence of affirmative proof of fraud, partiality or unfairness, which are never presumed, every intendment is in favor of the award. Root v. Renwick, 15 Ill. 463; Haywood v. Harmon, 17 Id. 481. And we know of no case in which a conversation by one arbitrator with a third party upon the matters submitted not shown to have been procured by a party to the submission, nor to have been sought by the arbitrator, or to have had the effect to prejudice him,

Shear v. Mosher.

or to have influenced the action of the other arbitrators composing a majority having power to determine the questions submitted, has been held to justify the setting aside of the award.

We think the circuit court erred in setting it aside in this case for the cause assigned, and the decree is therefore reversed·